[No. 18855.  Department Two.  February 27, 1925.]

HERMINE JENSEN, *as Administratrix of the Estate of
Jens P. Jensen, Deceased, Appellant,* v. CHICAGO,
MILWAUKEE & ST. PAUL RAILWAY COMPANY
*et al., Respondents.*[1]

NEGLIGENCE (23)—IMPUTED NEGLIGENCE—DRIVER OF AUTOMOBILE.
Where a number of persons entered upon a joint enterprise to take
a trip by auto to attend an entertainment, in an automobile owned
and driven by one of them, at their joint expense, it was a common
venture, and the contributory negligence of the driver of the car
would be imputed to the others riding with him and preclude re-
covery for wrongful death of one of the party when struck by a
railway train.

RAILROADS (64, 72)—NEGLIGENCE—ACCIDENTS AT CROSSINGS—CON-
TRIBUTORY NEGLIGENCE—INSTRUCTIONS.  In an action for the wrongful
death, in a railroad accident, of one of a motor party that had at-
tended a prize fight, an instruction on an issue as to the intoxica-
tion of the driver of the car bearing on the degree of care exer-
cised by him and by those riding with him with knowledge of his
condition, is authorized by evidence that, twenty minutes after the
collision, the breath of the driver smelled of whiskey, as did the
breath of the deceased, when taken to the hospital, and that bottles
of beer and an empty whiskey bottle were found in the wreck of
the car.

Apeal from a judgment of the superior court for
Pierce county, Askren, J., entered February 23, 1924,
upon the verdict of a jury rendered in favor of the
defendant, in an action for wrongful death.   Affirmed.

[1]Reported in 233 Pac. 635.

*W. H. Abel, Robert B. Abel,* and *John D. Ehrhart,* for appellant.

*Geo. W. Korte* and *H. S. Griggs,* for respondents.

MAIN, J.—Jens P. Jensen while riding in an automobile was struck and killed by one of the defendant's railroad trains at a crossing, and his administratrix brought this action for damages. There was a verdict for the defendant, and the plaintiff appeals.

The facts, so far as material for the purpose of this decision, may be stated thus: At about noon on June 12, 1923, Joe Sonnabend, Jensen and five others left Hoquiam in a Cole automobile for the purpose of attending a prize fight in Seattle that night. Sonnabend owned the car. The trip had been talked over among the parties for a number of days. They were to drive through to Seattle, attend the fight and return to Hoquiam. Jensen gave Sonnabend a ticket. The members of the party, aside from Sonnabend and one other, had discussed among themselves before they started the matter of the expense, and they had agreed that Sonnabend should not be out anything. It does not appear that this information had been conveyed to Sonnabend. They arrived in Seattle at about six o'clock, had dinner, attended the fight and started for home. At Sumner, while crossing the tracks of the respondent's railway, the automobile was struck by an engine pulling a freight train. Jensen was severely injured and died in the hospital about two hours afterwards.

The facts bearing on the question as to whether the respondent was negligent, and on the question whether Sonnabend, the driver of the car, was negligent, need not be here detailed, as the case turns primarily upon whether Sonnabend's negligence was imputed to Jen-

sen. Further reference to some of the facts will be hereinafter made.

The first question is whether what is known as the doctrine of common enterprise or community of interest was properly submitted to the jury. The instruction complained of was as follows:

"If you find from the evidence that the purpose of the trip from Hoquiam to Seattle by Jensen and the other occupants of the automobile was to go there to attend a prize fight and return to Hoquiam, and that there was an understanding between them that they were to jointly bear the expenses of the trip, then you are instructed that this would make the purpose of the trip a common venture in which all of the parties has a community of interest and under those circumstances the negligence, if any, of Sonnabend, as the driver of the automobile, would be imputed to the deceased Jensen and the others in the party. . . ."

The objection to the instruction appears to be that it does not embody the thought that, at the time of the accident, the negligence of Sonnabend could not be imputed to Jensen unless at that time Jensen had authority and control over the driver of the automobile in the matter in which the driver was negligent. That is the rule when the question of the relationship is master and servant or principal and agent, but it is not the rule with reference to a joint enterprise or a community of interest. The question as to what constitutes a joint enterprise or a community of interest has been frequently before the courts. In *Washington & O. D. R. Co. v. Zell's Adm'r*, 118 Va. 755, 88 S. E. 309, two parties, Zell and Peck, were intimate friends and associates. Peck owned an automobile in which he and Zell frequently went out together on pleasure trips. Zell frequently drove the car when Peck was along. When out on one of their trips and Peck was driving, the automobile was struck by a passenger train owned

and operated by the defendant and Zell was killed.  It was there held that the negligence of Peck was imputed to Zell and would bar a recovery.  In the course of the opinion it was said:

"But it is claimed that the negligence of the driver, Peck, cannot be imputed to Zell.  Inasmuch as they left Alexandria fifteen minutes before the accident with Peck at the wheel, it is a fair inference that he was still driving the car, but in our view of the case that fact is immaterial, because Zell's situation did not bring him within the rule applicable to invited guests or passengers as applied in *A. & D. R. Co. v. Ironmonger*, 95 Va. 625, 632, 29 S. E. 319, but, upon the contrary, brought him within the reason and the terms of the rule that where two persons are engaged in a joint enterprise or adventure in the use of an automobile, even though the enterprise or adventure be only a pleasure trip, the contributory negligence of either, within the scope of the enterprise, will bar a recovery by the other.  In this case Zell had taken the lead that morning in the joint project in which they were engaged, and can by no reasonable intendment be classed as an invited guest or passenger in the sense in which those terms are used in the *Ironmonger* case and the many other cases of that type, the authority of which in cases where they apply we recognize, but which are distinguishable in principle from this one."

In *Wentworth v. Town of Waterbury*, 90 Vt. 60, 96 Atl. 334, the plaintiff, his wife and a young woman and one Gibson were riding in an automobile.  Gibson was the driver.  An accident occurred in which Gibson was negligent.  The parties in the automobile had gone out for a ride.  On the trip the plaintiff sat with Gibson on the front seat and the trip was for the purpose of showing Lake Champlain to the ladies.  It was there held that the plaintiff and Gibson were engaged in the joint purpose of taking the ladies for an afternoon's ride.  It was said:

"In the view which we are inclined to think the case permits us to take, the plaintiff and Mr. Gibson were engaged in carrying out a common purpose, and the negligence of each was, on well-settled and rational principles, imputable to the other."

In *Barry v. Harding*, 244 Mass. 588, 139 N. E. 298, after holding that the facts in that case did not·show the essential elements which constitute in the law of negligence a joint enterprise, it was said:

"The evidence does not warrant a finding that the plaintiff had an equal right with the driver in respect of the control of the automobile; that it does not warrant a finding that he had power to control the means, or an equal right to direct the conduct of the undertaking; nor does it show a community of interest in the object and purpose to be subserved by the giving and acceptance of the invitation to carry the plaintiff to the place where he might take control."

In *Adams v. Swift*, 172 Mass. 521, 52 N. E. 1068, a mother and her minor daughter were invited for a drive. The daughter accepted unconditionally, the mother on condition that she pay half of the expense. The daughter drove the team. An accident occurred and the mother, Mrs. Swift, was made a party defendant. The question was whether the trip was a joint undertaking. It was there said:

"The evidence justified a finding that the excursion was a joint undertaking, of which Caroline F. Swift, the mother of the young woman who was driving when the accident happened, was an equal promoter and manager, and not a mere guest;· and that, under her control and direction, her daughter, so inexperienced a whip that it might be negligence to allow her to drive upon such an occasion, was driving, and driving carelessly. Therefore the case was for the jury."   .   .

In *Hurley v. Spokane*, 126 Wash. 213, 217 Pac. 1004, a brother and sister were going to church in an automobile owned by their father. The brother was at the

wheel.   An accident occurred and the question was
whether the negligence of the brother would be imputed
to the sister.   The trip was held to be a common ven-
ture and the negligence of the one driving was imputed
to the other.   It was there said:

"But it is said that to the appellant Gertrude Hurley
cannot be attributed the contributory negligence of
the driver, her brother.   Here, however, the record
shows that she and her brother were using the car with
their father's permission on a common venture, and it
therefore becomes immaterial who at the time may
have been at the steering wheel."

The instruction complained of in the present case in
effect told the jury that, if the purpose of the trip was
to go from Hoquiam to Seattle to see a prize fight and
return, and there was an understanding between the
parties that they were jointly to bear the expenses of
the trip, it was a common venture and the negligence
of Sonnabend would be imputed to Jensen.   Under the
authorities this was a correct statement of the law and
the question was one for the jury.   The fact that
Sonnabend testified that Jensen was his guest is not
controlling because it was nothing more than the con-
clusion of the witness.   The facts justified the court in
submitting to the jury the question whether or not the
parties were on a joint enterprise or were following a
common purpose.

Objection is also made to an instruction upon the
matter of Sonnabend's intoxication.   This instruction
was to the effect that if Sonnabend was, at the time of
the accident or immediately before, under the influence
of intoxicating liquor to such an extent as to dull his
sense of sight and to prevent or tend to prevent him
from exercising the care and caution which a sober and
prudent man would have exercised under the circum-
stances, and that Jensen knew, or should have known,

of Sonnabend's condition and thereafter continued to ride with him, that this would constitute negligence on Jensen's part. The particular objection to the instruction is not that it does not correctly state the law, but that there is no evidence to justify the giving of an instruction on that subject. Two doctors who appeared at the scene of the accident about twenty minutes after it occurred testified that Sonnabend's breath smelled strongly of intoxicating liquor. The nurse who took care of Jensen after he was taken to the hospital testified that his breath smelled of liquor. Another witness, who was at the scene of the accident soon after it occurred, testified that in the wreckage of the car there were found bottles of Canadian beer and broken bottles, and also a whiskey bottle that was empty. Broken beer bottles containing the same label as the ones that were found in the car were lying to one side. There was sufficient evidence to justify giving the instruction.

The judgment will be affirmed.

FULLERTON, BRIDGES, MACKINTOSH, and HOLCOMB, JJ., concur.