Argued February 7; affirmed March 21; rehearing denied
April 11, 1933

## BRIGHAM *v.* MUNDEN

(19 P. (2d) 1096)

*Paul R. Harris,* of Portland (Davis & Harris and
Donald K. Grant, all of Portland, on the brief), for
appellant.

*Nicholas Jaureguy,* of Portland (Cake & Cake and
Jaureguy & Tooze, all of Portland, on the brief), for
respondent.

BELT, J. This is an action to recover damages for personal injuries sustained in an automobile accident which occurred in the state of Washington. The defendant Munden was riding in the automobile owned and driven by Mrs. Anna Y. Bennett. Plaintiff contends that, at the time of the collision, Mrs. Bennett and Munden were engaged in a joint enterprise and, therefore, the negligence of the driver is imputed to defendant. He asserts that he was merely a guest. As a result of the collision, Mrs. Bennett was fatally injured. The trial court directed a verdict in favor of defendant upon the ground that there was no evidence of a joint enterprise.

Since the accident occurred in Washington, it is conceded that the law of that state controls. As the appeal is predicated on the alleged error of the trial court in directing a verdict and in striking certain testimony relative to a trip made by Mrs. Bennett and Munden about a year previous, details of the collision are not important. It remains only to apply to the facts in this case the law as declared by the supreme court of our sister state.

Mr. Munden testified that he made the trip to La Center for the purpose of visiting a sick friend and that Mrs. Bennett told him ''she had some friends out there that she hadn't seen for a long time and she wanted to go to see them too''. He further testified, ''I told her I was going out there and she told me then she would like to go, too, and I knew she had a car so I said, 'Well, all right, if you are going out there, we can go together'—or she suggested that I go with her, that was first, and I said 'Yes, I would just as soon go with you as anybody', so we arranged to go together''. Relative to the expenses of the trip, Munden testified in substance that he intended to fill the tank of the

automobile upon their return from La Center, but that "there was no arrangement made for me to pay for it".

To substantiate the theory of joint enterprise, plaintiff introduced the testimony of Emily F. Morris, a nurse in the Clarke General hospital at Vancouver, to which Munden and the plaintiff were taken after the collision. This nurse was employed to care for the injured child. She thus testified concerning an alleged conversation with Munden while he was in the hospital: "Mr. Munden was calling for help, and I went in to help him; he had one of these braces on, too, I think he had a cast, also. He was calling for help and the other nurses were busy, so I went in to help him, and I started a conversation with Mr. Munden and he told me that he and Mrs. Bennett were on their way to * * * La Center, and they were going to collect a note, and as I remember it, he mentioned $2,500, and Mr. Bennett also said—Mr. Munden also said, he and Mrs. Bennett were engaged to be married and were to be married, and he was feeling very badly, and crying, and broke down, so I didn't question him any more; but he told me he remembered nothing of the accident at that time. He had been unconscious several days and he was evidently immediately knocked out". On cross-examination, the witness stated that, although the patient did not articulate plainly because of an injury to his tongue, she rather drew the conclusion that the note in question was his. He had, she admitted, been conscious for only about a day. Defendant Munden denied that anyone in the state of Washington owed him on a promissory note and also contradicted the statement that he and Mrs Bennett were engaged to be married. He testified that he had no recollection of any conversation whatsoever with Mrs. Morris. There is no evidence that any person in the

state of Washington or elsewhere had executed a note in favor of Mrs. Bennett.

■ The legal principles applicable are thus clearly stated in *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57 (280 P. 932):

"* * * The relation as a legal concept cognizable by the courts, must have its origin in contract. There must be an agreement to enter into an undertaking in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance. Necessarily the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance, and an equal right of control over the agencies used in its performance".

Also to the same effect see *Dahl v. Moore,* 161 Wash. 503 (297 P. 218), wherein the Supreme Court of Washington, speaking through Mr. Justice Holcomb, said:

"We have held that to constitute a joint venture there must be an agreement to enter into an undertaking in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance. Jensen v. Chicago, Milwaukee & St. Paul Railway Co., 133 Wash. 208, 233 P. 635; Rosenstrom v. North Bend Stage Line, 154 Wash. 57, 280 P. 932".

We find the last expression of the Supreme Court of Washington, relative to joint enterprise, in *Colvin v. Simonson,* decided November 30, 1932, 16 P. (2d) 839, wherein the court quoted with approval the above language of *Rosenstrom v. North Bend Stage Line,* supra.

Appellant relies strongly upon *Jensen v. Chicago, Milwaukee & St. Paul Railway Co.,* 133 Wash. 208 (233 P. 635), but it is noted that in that case there was an agreement that Sonnabend, the owner of the car, "should not be out anything". It must be admitted,

however, that there is some language in the Jensen case which cannot be reconciled with the later decisions of that court.

■ In the instant case there is no contract, express or implied under and by virtue of which Munden had the right to exercise any control over the operation of the automobile. This is not a case where the owner agreed to furnish the automobile and the other party to bear the expenses of the trip. True, Munden said he intended to fill the tank with gasoline when they returned to Vancouver, but, if he intended to do so, it was by reason of his generosity and not as a result of any agreement. Neither do we think, in the light of the entire record, that a reasonable inference could be drawn from the testimony of the nurse that Mrs. Bennett and Munden were going to La Center to collect on a note in which these parties were jointly interested. There is no substantial evidence tending to show that Mrs. Bennett and Munden were engaged in a joint enterprise as defined by the decisions of our sister state.

■ In our opinion the trial court did not err in striking certain evidence relating to a trip taken to Bend, Oregon, by Mrs. Bennett and the defendant about a year prior to the one involved in this case. It is very doubtful, under the evidence stricken, whether they were engaged in a joint enterprise on the trip to Bend. Assuming, however, that they were thus engaged, we fail to see where it has any bearing upon their relationship on the trip in question. We have found no authority which supports the contention of appellant relative to this assignment of error.

We conclude that the trial court was right in directing a verdict in favor of the defendant, and the judgment based thereon is affirmed.

RAND, C. J., ROSSMAN and KELLY, JJ., concur.