Venke Louise Tveit HAKENSEN, Administrator of the Estates of Arne Peder Tveit, Sonja Louise Tveit, and Peder Simonsen, Decedents, and Venke Louise Tveit Hakensen, Appellants,

v.

Faye ENNIS, Special Administrator for the Estate of Karen Solveig Simonsen, Appellee.

No. 3808.

Supreme Court of Alaska.

Oct. 13, 1978.

William H. Babcock, Sitka, for appellants.

James B. Bradley, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, BURKE and Matthews, Justices, and DIMOND, Senior Justice.

OPINION

DIMOND, Senior Justice.

On May 22, 1975, an automobile with four occupants disappeared on its way from Prince Rupert, British Columbia, to Seattle, Washington. On July 20, 1975, a portion of a human body was discovered on a sand bar in the Skeena River, approximately 50 miles east of Prince Rupert. The Skeena River borders the Yellowhead Highway on the portion of the road between Prince Rupert and Terrace, British Columbia, and this is the route the missing automobile was presumed to have taken on its way to Seattle.

The remnants of the body found were so badly decomposed that the person's features were not recognizable. However, with the body a wallet was found with identification in the name of Peder Simonsen, one of the occupants of the automobile. The area was searched by foot, by air using a helicopter, and by water using a diver to search the shoreline. Neither the automobile nor the other three occupants were found, and those persons have not been heard from or located.

Besides Peder Simonsen, the occupants were his wife, Karen Simonsen, and the latters' two grandchildren, Arne and Sonja Tveit. Karen Simonsen was the driver of the automobile. Her husband, Peder, did not know how to drive.

This action for wrongful death was commenced by Venke Hakensen, the mother of the two Tveit children, who were in the automobile. Mrs. Hakensen was also the daughter of Mrs. Simonsen and the stepdaughter of Peder Simonsen. It was alleged in the complaint that Karen Simonsen's negligence resulted in the automobile leaving the highway and plunging into the

Skeena River causing the death of all the occupants. The defendant moved for summary judgment and the plaintiffs filed a cross-motion for summary judgment. The superior court granted the defendant's motion, and plaintiffs have appealed from that decision.

Because of the absence of evidence tending to establish that the death of the occupants of the automobile was caused by the negligence of Mrs. Simonsen and the manner in which she drove the automobile, the plaintiff/appellant Venke Hakensen relies upon the doctrine of *res ipsa loquitur* to prove negligence on the part of Mrs. Simonsen. *Res ipsa loquitur* means the thing speaks for itself. Concerning this doctrine, we have recently said:

> The doctrine of *res ipsa loquitur*, meaning "the thing or transaction speaks for itself," permits a finding of negligence from the circumstances surrounding the injury. It does not allow negligence to be established from the mere fact of injury itself. The doctrine, where applicable, is a bridge, dispensing with the requirement that a plaintiff specifically prove breach of duty, once that duty and proximate cause have been established. [footnotes omitted] [1]

■ It is true that the plaintiff is not required to eliminate with certainty all causes or inferences, other than the negligence on the part of the driver, Mrs. Simonsen. As Professor Prosser has stated:

> All that is needed is evidence from which reasonable men can say that on the whole it is more likely that there was negligence associated with the cause of the event than that there was not.

Prosser, Torts § 39 at 218 (4th ed. 1971). But that cannot reasonably be said in this case. Whether the body discovered on the sandbar, identified as Mr. Simonsen from the contents of the wallet found on the body, was there as the result of an accident or from criminal activity of some sort remains in doubt. There are no witnesses to any fact relating to the automobile involved, nor is there any other evidence bearing on the cause of Mr. Simonsen's death or the disappearance of the other passengers which relates to Mrs. Simonsen's care or lack of it in driving the automobile. Of course, it is possible that there was some lapse on her part and that she was negligent, and because of that, the automobile went off the highway and into the river. But it is also possible, assuming the car did go into the river, that this was caused by skidding of the automobile, not due to Mrs. Simonsen's fault, or perhaps by a blown tire, a loss of brake fluid, which would cause the brakes to fail, a failure in the steering mechanism, a defect in the road, the actions of the driver of another vehicle, or for some other reason not due to lack of care on the part of the driver. *See* Speiser, *The Negligence Case: Res Ipsa Loquitur*, Vol. 2, § 26.7 (1972).

■ In such a situation, the balance of probabilities between (1) causes of an accident involving the automobile which are due to lack of care on the part of the driver, and (2) criminal activity, or causes of an accident not due to lack of reasonable care, are so equal that a conclusion that Mrs. Simonsen was negligent cannot reasonably be found and would be the result of mere speculation. *Res ipsa loquitur* would not be applicable in this situation because at least one of the three prerequisites to the applicability of the doctrine cannot be shown to exist, namely: that the disappearance of the automobile was something which ordinarily would not occur in the absence of Mrs. Simonsen's negligence.[2]

The plaintiff relies on a case involving the unexplained disappearance of an airplane, where the Alaska Territorial District

1. *Widmyer v. Southeast Skyways*, 584 P.2d 1, 10 (Alaska 1978), *quoting, Smith v. O'Donnell*, 215 Cal. 714, 12 P.2d 933, 936 (1932).

2. The second requirement would be that the automobile was within the exclusive control of Mrs. Simonsen. The third requirement is that the injurious condition or occurrence was not due to any voluntary action or contribution on the part of the plaintiff. *See Widmyer v. Southeast Skyways, Inc.*, 584 P.2d 1 (Alaska 1978).

Court applied the doctrine of *res ipsa loquitur. Haasman v. Pacific Alaska Air Express*, 100 F.Supp. 1, 13 Alaska 439 (D.Alaska 1951), *aff'd sub nom. DeMarais v. Beckman*, 198 F.2d 550, 13 Alaska 745 (9th Cir. 1952), *cert. denied* 344 U.S. 922, 73 S.Ct. 388, 97 L.Ed. 710 (1953). There are valid distinctions between the present case and the situation presented in *Haasman, supra.* The disappearance of an aircraft carries with it a strong connotation that a crash has occurred. The same cannot be said when an automobile disappears. Moreover, although this is in part a matter of intuition as the parties have presented no statistics, an unobserved crash of an airliner seems more likely to be the product of a breach of duty on the part of the owner/operator, than is the unwitnessed destruction of a private automobile. As we stated recently in *Widmyer v. Southeast Skyways, Inc.*, 584 P.2d 1, 14 (Alaska 1978):

> The general safety record of air travel and the present state of air technology compel us to conclude that air crashes do not normally occur absent negligence, even in inclement weather. [footnotes omitted]

A commercial carrier must exercise the highest degree of care for the safety of its passengers. *Widmyer, supra*, at 5.[3] This enhanced duty bears on the applicability of the doctrine of *res ipsa loquitur* in two ways:

> (1) It affects the matter of probability. Wherever liability attaches more frequently, "the inference of negligence becomes all the easier to draw. As the precautions that the defendant must take to avoid injury increase there is a proportionate increase in the number of available hypotheses involving carelessness."

It should be noted that this reasoning applies not only where there is a relationship which calls for great care, but whenever the dangerous nature of the defendant's conduct calls for commensurately great precautions. This does not mean (logically) that an inference of negligence may be drawn in all cases calling for great care, but that it may be more easily drawn from facts that otherwise might be regarded as equivocal. (2) In addition to the matter of probabilities as it would be revealed to an all-seeing eye, where the relationship calls for great care, that fact reflects a policy of stricter liability which in turn is likely to be reflected in greater readiness of courts, in doubtful cases, to make an assumption of probabilities which favors liability. That is to say, where for some reason extraneous to the mere matter of probability there is a policy in favor of recovery, doubtful questions of probability are more likely to be decided in favor of a plaintiff.

2 Harper & James, Torts, § 19.6 pp. 1084–85 (1956) (citation omitted).

Because of the combination of uncertainties involved, we cannot say that the unexplained disappearance of an automobile from a highway, as in this case, will not normally occur in the absence of negligence. As we have stated, this is one of the prerequisites for invoking the doctrine of *res ipsa loquitur.* Plaintiff relies solely on this doctrine to establish negligence on the part of Mrs. Simonsen. That doctrine is not applicable in this case under Alaska law.[4] Therefore, there is no inference that Mrs. Simonsen was negligent. This means that there was no genuine issue as to any material fact and that the defendant/appellee was entitled to judgment as a matter of

---

**3.** We express no opinion as to the applicability of *res ipsa loquitur* to the unexplained disappearance of a private airplane.

**4.** The parties have not discussed the question of whether the doctrine of *res ipsa loquitur* is a matter of substance or procedure which would be relevant in determining whether the doctrine should be covered by the law of the forum (Alaska) or the law of the place where the alleged injury occurred (British Columbia, Can-

ada). *See Lillegraven v. Tengs*, 375 P.2d 139, 140–41 (Alaska 1962); Restatement (Second) Conflict of Laws § 135, comment b, at 374–75 (1971); Leflar, American Conflicts Law § 124 at 298 (1968). Since both parties discuss the doctrine as if the law of Alaska is to govern, we presume that either or both of the parties have waived any contention that the law of British Columbia should be applicable. We make no decision on that question in this case.

law.[5]  The trial judge was correct in entering a summary judgment in favor of defendant.

AFFIRMED.

CONNOR, J., not participating.